UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VIAN ABDULKAREEM MAKTTOOF,

    Plaintiff,

    v.

MARCO RUBIO, et al,

    Defendants.[1]

Civil Action No. 24-1344 (JDB)

## MEMORANDUM OPINION AND ORDER

Approximately two years have passed since Vian Abdulkareem Makttoof's consular interview seeking an immigrant visa, and her visa application remains in a bureaucratic purgatory known as "administrative processing." Makttoof claims she has experienced an unreasonable delay and asks this Court to order State Department officials to render a final decision on her application. Although none of the defendants' threshold arguments prevail, its merits one does: at this point, the delay is not unreasonable. Accordingly, the Court will grant the motion to dismiss without prejudice.

### Legal Background

Like many immigrants, an immigrant visa application takes a winding path. An "immediate relative[] . . . of a citizen of the United States" may seek permanent resident status by having their citizen relative file a Form I-130 with the United States Customs and Immigration Services ("USCIS"), an agency within the Department of Homeland Security. See 8 U.S.C. § 1151(b)(2)(A)(i); 8 C.F.R. § 204.1(a)(1). If USCIS approves the petition, it forwards the case to

---

[1] See Fed. R. Civ. P. 25(d).

1

the National Visa Center ("NVC"), the State Department's visa processing center. 8 C.F.R. § 204.2(a)(3). The NVC then schedules a consular interview at the embassy or consulate with jurisdiction over the applicant's residence. See 22 C.F.R. §§ 42.61(a), 42.62(a). Following this interview, the consular officer must "issue the visa" or "refuse the visa." Id. § 42.81(a).[2]

A refusal, however, need not be the end of the line. Many "refused" applications are not interred but rather placed in administrative processing, a status of indefinite duration in which the consular officer may grant the application after consideration of "additional information." See U.S. Dep't of State, Admin. Processing Info., https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html [https://perma.cc/2DTQ-XTRY] ("Admin. Processing Info"). An "applicant [can] overcome a refusal . . . in two instances: when additional evidence is presented, or administrative processing is completed." 9 FAM § 306.2-2(A)(a). The first scenario occurs if within one year of refusal the applicant "adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." 22 C.F.R. § 42.81(e). In this circumstance, reconsideration—though not, of course, a different result—is mandatory.

## Factual Background

Makttoof's visa application has wound its way through most of these steps. Makttoof's U.S.-citizen husband filed a Form I-130 on her behalf, and USCIS approved it in January 2023. Compl. [ECF No. 1] ¶ 17. Her application became documentarily complete with the NVC in early 2023 and she completed an interview at the U.S. Embassy in Ankara, Turkey on March 30, 2023. Id. ¶ 19–20. When the interview concluded, the consular officer placed her application in administrative processing—meaning the application was formally refused—and asked her to

---

[2] A third option irrelevant here permits the consular officer to "discontinue granting the visa." 22 C.F.R. § 42.81(a); see id. § 42.84.

submit an additional form to provide the embassy "with additional information in order to establish her eligibility for an immigrant visa." Id. ¶ 21. She timely submitted the supplemental information, "and nothing remains outstanding." Id.

Since then, she has heard nothing.[3] Makttoof's daughter, who was interviewed on the same day, received an immigrant visa and now resides with her father in the United States. Compl. ¶ 4. But Makttoof hasn't received word, and her application remains formally refused. Id. ¶ 24. As a result, she remains in Turkey while her husband and daughter live stateside. Id. ¶ 25–26.

Understandably eager to reunite with her family, Makttoof filed this lawsuit in May 2024, arguing that the defendants have unreasonably delayed their final adjudication of her application and asking this Court to speed things along. See Compl. ¶¶ 33, 36; p. 8.[4] At that point, 13 months had passed since her interview. Id. ¶ 33. The defendants moved to dismiss, see Mot. to Dismiss & Mem. in Supp. Thereof [ECF No. 11] ("Mot."), and by now, Makttoof is nearing her interview's second anniversary.

## Analysis

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In this posture, the plaintiff enjoys the benefit of "all reasonable inferences" to be drawn from her allegations. Sanchez v. Off. of State Superintendent of Educ., 45 F.4th 388, 395 (D.C. Cir. 2022). The same standard applies to a facial (rather than factual) challenge to a complaint's

---

[3] The Court observes that the State Department's online visa application tracker indicates that Makttoof's application remains refused but that it was updated in some form on March 25, 2025. Because the Court has not received any update from the parties, it presumes the application's status remains the same as it was upon the filing of the complaint and that no meaningful action has occurred in the meantime.

[4] The complaint is dated May 6, 2023, see Compl. at 8, but it was in fact filed on May 8, 2024.

jurisdictional allegations under Rule 12(b)(1).  See Simon v. Republic of Hungary, 77 F.4th 1077, 1116 (D.C. Cir. 2023).

Defendants offer a menu of grounds for dismissal.  First they argue that the Court must dismiss two of the defendants—the Secretary of State and Deputy Secretary of State—because they are unable to provide the relief sought, see Mot. at 11–13; this is incorrect.  Next they contend that the consular non-reviewability doctrine precludes judicial intervention here, see id. at 13–20; the Court disagrees.  Third they disclaim any clear, non-discretionary duty to take any further action on Makttoof's application as required for either mandamus or Administrative Procedure Act ("APA") relief, see id. at 20–27; but 22 C.F.R. § 42.81(e) imposes just such a duty.  Finally they alight on a meritorious ground for dismissal: Makttoof's complaint fails to allege an unreasonable delay that would justify judicially-imposed line-jumping.  See id. at 28–35.

I. **The complaint names proper defendants.**

The defendants first seek dismissal of the Secretary of State and Deputy Secretary of State, arguing that because "even the Secretary of State" may not dictate a consular officer's visa determination, these defendants cannot redress the harm alleged.  See Mot. at 11 (emphasis omitted) (quoting Baan Rao Thai Rest. v. Pompeo, 985 F.3d 1020, 1024 (D.C. Cir. 2021)); see also Tahavori v. Blinken, Civ. A. No. 23-1460 (JDB), 2024 WL 1328546, at *3 n.1 (D.D.C. Mar. 28, 2024) (explaining that this argument sounds in redressability).

This is well-trodden ground in this District.  High-level State Department officials may not dictate a visa application's outcome but they may dictate its timing.  Because "[n]othing . . . precludes senior State Department officials from directing consular officers to adjudicate pending applications 'within a reasonable time,'" such officials are proper defendants in a suit like this one, which only seeks a speedier determination, not a favorable one.  Tahavori, 2024 WL 1328546, at

4

\*3; see also Kahbasi v. Blinken, Civ. A. No. 23-1667 (LLA), 2024 WL 3202222, at \*4 (D.D.C. June 27, 2024) (Secretary of State and Deputy Secretary of State proper defendants).  Hence, the Court rejects the argument that the Secretary of State and his deputy should be dismissed from this case.

**II.     The consular non-reviewability doctrine does not bar judicial intervention here.**

The defendants next invoke the consular non-reviewability doctrine.  Mot. at 13.  The doctrine precludes courts from reviewing a consular officer's decision to exclude or admit a visa applicant.  See Goodluck v. Biden, 104 F.4th 920, 925–26 (D.C. Cir. 2024).  But, as this Court and many others have held, the doctrine bars only "review of final visa decisions." Tahavori, 2024 WL 1328546, at \*4.[5]

Makttoof has not received a final visa decision.  Per the embassy's online materials, Makttoof's placement in administrative processing meant that "the consular officer did not have all of the information required to determine if [she was] eligible to receive a visa," meaning that her case remains "pending further action."  U.S. Embassy & Consulates in Turkiye, If Your Case Requires Further Admin. Processing (Aug. 28, 2024), https://tr.usembassy.gov/administrative-process-iv/ [https://perma.cc/2PJG-YJYY].  Accordingly, what Makttoof asks of this Court is not the forbidden review of a final decision but rather the permissible review of its absence.  See, e.g., de Belinay v. Mayorkas, Civ. A. No. 24-240 (CRC), 2025 WL 671120, at \*4 (D.D.C. Mar. 3, 2025);

---

[5] The defendants posit that the Supreme Court's recent decision in Department of State v. Muñoz, 602 U.S. 899 (2024), undermines this conclusion and extends the doctrine to bar review of a failure to act.  See Mot. at 13–14. It does not.  Muñoz only reiterated what has long been the case: that the doctrine prohibits "judicial review of a consular officer's denial of a visa."  Muñoz, 602 U.S. at 908.  "Muñoz does not speak to the Court's authority" to grant the relief sought here.  Janay v. Blinken, 743 F. Supp. 3d 96, 112 (D.D.C. 2024).  The same goes for the D.C. Circuit's recent unpublished decision in Karimova v. Abate, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), which did not pass on consular non-reviewability one way or the other.  See 2024 WL 3517852, at \*6; de Belinay v. Mayorkas, Civ. A. No. 24-240 (CRC), 2025 WL 671120, at \*4 n.2 (D.D.C. Mar. 3, 2025).

Meyou v. U.S. Dep't of State, Civ. A. No. 21-2806 (JDB), 2022 WL 1556344, at *2 (D.D.C. May 17, 2022).

### III.     There is a clear, non-discretionary duty to reconsider Makttoof's application.

A court may compel agency action only in the "extraordinary" case where an agency has "unreasonably delayed" taking an action it has a "clear duty" to take. In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008). The Court may do so via mandamus, see 28 U.S.C. § 1361, or the APA, see 5 U.S.C. § 706(1). Either way, such an order may issue only to require an agency to take "a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004) (emphasis omitted); see also In re Center for Biological Diversity, 53 F.4th 665, 670 (D.C. Cir. 2022) (mandamus only appropriate to order performance of "a crystal-clear legal duty" (internal quotation marks omitted)). The defendants insist that no such duty exists here.

The relevant law in this District is in flux following the D.C. Circuit's unpublished decision in Karimova v. Abate, Civ. A. No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam). That case held that the APA's Section 555(b)—in whose instruction that agencies must "proceed to conclude a matter presented to" them "within a reasonable time" many courts had previously found a non-discretionary duty to act—in fact imposes no such duty. See Karimova, 2024 WL 3517852, at *3.

Though Karimova's precedential status is unclear, see Datta v. Rubio, Civ. A. No. 24-2937 (PLF), 2025 WL 752643, at *6 n.3 (D.D.C. Mar. 10, 2025), it does bolster the defendants' argument that Section 555(b) does not provide the duty Makttoof derives from it. No matter. This case presents no occasion to examine and apply Karimova, as Makttoof looks not only to § 555(b) but also to 22 C.F.R. § 42.81 to provide the requisite duty. See Compl. ¶ 29. And 22 C.F.R. § 42.81(e) imposes just the duty she needs: that a consular officer "shall . . . reconsider[]" an immigrant visa

6

application if an applicant "within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based." 22 C.F.R. § 42.81(e). That is a clear, non-discretionary duty Makttoof's consular officer must discharge without "unreasonable delay[.]" 5 U.S.C. § 706(1); see, e.g., Rivas v. Napolitano, 714 F.3d 1108, 1111 (9th Cir. 2013).[6]

The defendants' only escape from this duty would be if Makttoof's supplemental submission did not "tend[] to overcome" Makttoof's ground of refusal, or if she provided it more than a year post-interview. 22 C.F.R. § 42.81(e). But Makttoof submitted the additional information upon request, not of her own accord, and it would rob her of the reasonable inferences to which she is entitled on a motion to dismiss to figure that the consular officer requested (and thus she submitted) irrelevant information. See Compl. ¶ 21.[7] The same goes for timing. While Makttoof's complaint does not allege when precisely she provided the supplemental material, it alleges that she did so "within the stipulated time," id., and the complaint was filed only 13 months after her interview, id. ¶ 22, leaving the conclusion that Makttoof submitted the supplemental material within a year after her interview a reasonable (perhaps the only reasonable) inference.

---

[6] See also, e.g., Cepeda v. USCIS, 624 F. App'x 52, 53 (2d Cir. 2015); Haeri Mehneh v. Blinken, Civ. A. No. 24-1374 (ZMF), 2024 WL 5116521, at *6 (D.D.C. Dec. 16, 2024) ("Section 42.81(e) . . . creates a nondiscretionary duty requiring consular officers to reconsider within a reasonable time visa applications refused under Section 221(g) and placed under administrative processing."); Ghannad-Rezaie v. Laitinen, Civ. A. No. 24-11665 (PBS), 2024 WL 4849587, at *3 (D. Mass. Nov. 21, 2024) (collecting cases); Sheikhalizadehjahed v. Gaudiosi, Civ. A. No. 24-1136 (SCR), 2024 WL 4505648, at *8 (E.D. Cal. Oct. 16, 2024); Parva v. Blinken, Civ. A. No. 23-3287 (TDC), 2024 WL 4042466, at *4 (D. Md. Sept. 4, 2024); Amerkhail v. Blinken, Civ. A. No. 22-149 (SRC), 2022 WL 4093932, at *5 (E.D. Mo. Sept. 7, 2022); Salem v. Holder, Civ. A. No. 10-6588 (CJS), 2012 WL 2027097, at *3 (W.D.N.Y. June 5, 2012). But see Ramizi v. Blinken, 745 F. Supp. 3d 244, 263 (E.D.N.C. 2024) (concluding otherwise); Nikpanah v. U.S. Dep't of State, Civ. A. No. 24-404 (NAD), 2025 WL 374931, at *7 (D. Ala. Feb. 3, 2025) (same).

[7] See Admin. Processing Info. ("A consular officer will request additional information when she or he believes the information is relevant to establishing that an applicant is eligible for the visa sought."). This is not to say that an applicant's unsolicited supplementation would not trigger this duty, though a complaint might need to include more detail about the material's content to create a reasonable inference that unrequested material would tend to overcome the ground of refusal.

Accordingly, the consular officer has a mandatory duty under § 42.81(e) to reconsider Makttoof's visa application.[8] An unreasonable delay in the performance of that duty could justify mandamus or APA relief.

### IV. There has been no unreasonable delay.

So the Court may review Makttoof's claim of unreasonable delay, but the claim does not succeed. The unreasonable-delay analysis looks to six non-exclusive factors derived from the D.C. Circuit's opinion in Telecommunications Research & Action Center v. FCC ("TRAC"), 750 F.2d 70 (D.C. Cir. 1984). See Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023). The factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

TRAC, 750 F.2d at 80 (cleaned up).

"The first and fourth TRAC factors are generally understood to be the most important, and both weigh strongly in [the defendants'] favor." Tahavori, 2024 WL 1328546, at *4; see also Da Costa, 80 F.4th at 340. The first factor—whether the agency's response time is governed by a "rule of reason"—favors State because "processing visas takes a baseline amount of time." Khazaei v.

---

[8] The Court is aware that the briefing does not focus on § 42.81(e), likely because, until Karimova unsettled things, this District enjoyed a near consensus that other provisions of law—like § 42.81(a) or 5 U.S.C. § 555(b)—provided the requisite duty. See, e.g., Arabzada v. Donis, 725 F. Supp. 3d 1, 12 (D.D.C. 2024) (citing Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry, 168 F. Supp. 3d 268, 282 (D.D.C. 2015)). Nevertheless, Makttoof's general invocation of § 42.81 suffices. See Compl. ¶ 29.

Blinken, Civ. A. No. 23-1419 (JEB), 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023). While there is no bright-line rule, "[d]istrict courts have generally found that immigration delays in excess of five, six, [or] seven years are unreasonable, while those between three to five years are often not unreasonable." Id.; accord Meyou, 2022 WL 1556344, at *3.

There is some dispute about how long the Court should consider this decision to have taken. The government urges that the clock stops when a plaintiff files a complaint, such that the Court should consider only a 13-month delay. See Def.'s Reply Supp. Mot. [ECF No. 14] at 17. Makttoof, meanwhile, believes that the clock continues to tick upon the filing of a complaint. See Pl.'s Mem. P. & A. Opp'n to Mot. [ECF No 13] ("Opp'n") at 7. The defendants' view makes little sense. On their view, being sued over unreasonable delay tolls the obligation to avoid unreasonable delay. Instead, the Court will (as it has in the past) assess the relevant delay as the time elapsed "from the last Government action to the issuance of the opinion." Meyou, 2022 WL 1556344, at *3 (internal quotation marks omitted).[9] But even on that more generous count, the delay—almost exactly two years—is well within the amount of time courts consider not unreasonable.

There is an additional wrinkle. The non-discretionary duty Makttoof awaits is the duty to reconsider Makttoof's application upon her post-interview supplementation. Though Makttoof's complaint does not say when she provided the additional information, that extra step necessarily restarted the clock at some point after her interview, meaning the delay has been under two years. Whatever the precise delay, it is not unreasonable. A two-year delay is undoubtedly frustrating. But, as explained above, courts in this District wait significantly longer before finding that this factor weighs in a plaintiff's favor.

---

[9] Indeed, there is some question about whether the clock starts earlier—upon "the initial visa application"—instead of "from the most recent government action." Tahavori, 2024 WL 1328546, at *5. Makttoof does not allege when she initially applied, nor does she argue for this earlier starting pistol. Accordingly, the Court counts from the most recent government action, that is, Makttoof's interview.

9

The fourth factor, the effect on competing agency priorities, also strongly favors the defendants. "As many courts have recognized, ordering an agency to expedite the review of a particular visa application results in line-jumping and ultimately delays the final adjudication of the applications that were skipped." Meyou, 2022 WL 1556344, at *4 (collecting cases). At bottom, these are generally "resource-allocation decisions that do not lend themselves to judicial reorderings of agency priorities." Khazaei, 2023 WL 6065095, at *7 (internal quotation marks omitted).

The second factor weighs slightly in Makttoof's favor. This factor asks whether Congress set a statutory "timetable or other indication of the speed with which it expects the agency to proceed"; if so, this information may inform the aforementioned "rule of reason." TRAC, 750 F.2d at 80. On the one hand, "Congress did not provide a statutory deadline to complete processing or adjudication of visa applications. In fact, Congress has given the agencies wide discretion in the area of immigration processing." Meyou, 2022 WL 1556344, at *3 (quoting Tekle v. Blinken, Civ. A. No. 21-1655 (APM), 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022)). On the other hand, lawmakers expressed, in a 2000 bill amending the Immigration and Nationality Act, "the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." Immigration Services and Infrastructure Improvements Act of 2000, Pub. L. No. 106-313, Title II, § 202 114 Stat. 1262, 1262 (codified at 8 U.S.C. § 1571(b)). The D.C. Circuit has concluded that this "aspirational statement . . . somewhat favors" plaintiffs like Makttoof who have waited longer than 180 days for an immigration benefit. See Da Costa, 80 F.4th at 344. But this hortatory language does not fundamentally alter the calculus that visa application processing takes time, and courts have been reluctant to find unreasonable delay except in egregious circumstances. See id. at 340–44.

The third and fifth factors favor Makttoof. These relate to the harm plaintiffs suffer from waiting and are commonly considered together. See id. at 344. The third factor counsels that "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake." TRAC, 750 F.2d at 80. The fifth factor is a "broader version of the same idea," Da Costa, 80 F.4th at 344, and directs courts to consider "the nature and extent of the interests prejudiced by delay," TRAC, 750 F.2d at 80. Makttoof alleges that she and her daughter are suffering "severe mental and emotional harm" due to the ocean between them, and the Court does not doubt it. Compl. ¶ 25; see also Health Report [ECF No. 13-1]. Family separation causes heavy "psychological, emotional, and financial harm." Haeri Mehneh v. Blinken, Civ. A. No. 24-1374 (ZMF), 2024 WL 5116521, at *8 (D.D.C. Dec. 16, 2024); see also Shoaie v. Blinken, Civ. A. No. 24-1513 (GMH), 2024 WL 4697732, at *13 (D.D.C. Nov. 6, 2024) (collecting cases for the proposition that family separation causes these factors to weigh in plaintiffs' favor).

Finally, the sixth factor—any impropriety on the agency's part—either favors the defendants or is neutral, as Makttoof alleges no impropriety. See Opp'n at 37; Tahavori, 2024 WL 1328546, at *6.

Considering these factors together, the Court concludes that Makttoof's complaint fails to plausibly state a claim for unreasonable delay. "The most important factors—those regarding the length of the delay and concerns about line-jumping—weigh in favor of granting the motion to dismiss." Meyou, 2022 WL 1556344, at *5. Meanwhile, the strongest countervailing consideration on Makttoof's side of the ledger—her separation from her family—is doubtless weighty but, sadly, is far from unique to Makttoof; it is an unfortunate reality that many visa applicants seek to reunite with their families. See, e.g., Hamdan v. Oudkirk, Civ. A. No. 24-1001

11

(BAH), 2024 WL 4553983, at *11 (D.D.C. Oct. 23, 2024); Pushkar v. Blinken, Civ. A. No. 21-2297 (CKK), 2021 WL 4318116, at *9 (D.D.C. Sept. 23, 2021).  And so these competing priorities dampen the strength of this consideration.  "While sympathetic to the challenges posed to plaintiff during [her] separation from [her family], this is insufficient to prioritize the processing of [her] visa application over many other individuals and families facing similarly difficult circumstances as they await immigration decisions." Hamdan, 2024 WL 4553983, at *11.

Accordingly, Makttoof's complaint fails to state a claim for unreasonable delay.

## Conclusion

The Court is sympathetic to Makttoof's predicament.  But while the defendants' threshold defenses fail, their merits defense succeeds: the nearly two-year delay in rendering a final decision on Makttoof's immigrant visa application is not unreasonable.  For the above reasons, it is hereby **ORDERED** that [11] the defendants' motion to dismiss is **GRANTED**; and it is further **ORDERED** that this case is **DISMISSED** without prejudice.  **SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Dated: March 27, 2025